UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALEX WIRTH, Individually and on behalf of
Vagabond Properties, LLC,

Plaintiff,

v.

CITY OF ROCHESTER, et al.,

Defendants.

Case # 17-CV-6347-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Alex Wirth, individually and on behalf of Vagabond Properties, LLC, brings this civil-rights action against Defendants City of Rochester and Daniel Arena, both individually and in his official capacity as Neighborhood Conservation Officer for the Neighborhood Service Center of the City of Rochester. ECF No. 1. Plaintiff's claims arise from the process to obtain a Certificate of Occupancy for a residential rental property under the City's property code. Before the Court are (1) Plaintiff's motion for partial summary judgment on his third, fourth and seventh causes of action against the City; and (2) Defendants' cross-motion for summary judgment on all claims. *See* ECF Nos. 37, 47. For the following reasons, the Court GRANTS summary judgment to Defendants on Count III, Count IV, Count V, and Count VII; and ORDERS Plaintiff to submit supplemental memoranda to this Court by October 30, 2020, (1) explaining whether he will maintain his Count VI claims in light of the disposition of his other causes of action, and (2) his theory with respect to those claims moving forward. Counts I and II are DISMISSED because they have been withdrawn by Plaintiff.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

Plaintiff Alex Wirth is the owner and managing member of Vagabond Properties, LLC ("Vagabond"), which he uses for the purpose of renting out residential properties. ECF No. 39 at 16-17. Wirth acquired a single-family house at 149 Gregory Street, in Rochester (the "Gregory Street Property"). *Id.* at 17. In April 2015, Wirth transferred ownership of the Gregory Street Property to Vagabond in preparation for renting it out as a residence. *Id.* at 16-17. The record is unclear as to the date the Gregory Street Property was leased after that transfer, but Plaintiff avers it was occupied by tenants "at all relevant times." *Id.* at 19.

On February 1, 2016, approximately 11 months after Wirth transferred ownership to Vagabond, the City sent a Notice ("Feb. 2016 Notice") to Vagabond regarding the Gregory Street Property, requesting that the property owner obtain a Certificate of Occupancy as required by Section 90-16A2(e) of the City's property code. ECF No. 46-9 at 1. Section 90-16A2 prescribes

circumstances when a property owner must obtain a Certificate of Occupancy, including certain changes in ownership, changes in occupancy, or expiration or termination of a prior Certificate of Occupancy. ECF No. 47-9 at 1.

In addition, the Feb. 2016 Notice requested that the owner of the Gregory Street Property complete an enclosed Certificate of Occupancy application. ECF No. 46-2. It also stated "[o]nce your completed application is received an appointment for the necessary property inspection will be scheduled. You will receive notice of the appointment by mail, along with a checklist of the items that will be reviewed during the inspection." Finally, the Feb. 2016 Notice included the following language: "**Be advised, if the C of O application is necessary, it must be submitted within forty (40) days from the date of this letter to prevent the fee from doubling, in accordance with § 39-222 of the City Code."** *Id.* (emphasis in original).

On March 1, 2016, Wirth submitted a Certificate of Occupancy application (the "Application") for the Gregory Street Property, indicating that this was a "New" certificate and not a transfer of ownership or renewal of a previous Certificate of Occupancy. ECF No. 46-3. The Application included a section titled "INSPECTION APPROVAL/DISAPPROVAL." *Id.* That section has two boxes that can be checked. They state as follows:

> (1) I, _______, am the owner/agent of the above referenced property. I have retained legal custody and control over the property to have it inspected. I do agree and consent to allow the City to inspect the property in its entirety as part of the City requirement for a Certificate of Occupancy. Inspection permission includes the initial inspection, any and all necessary reinspection and audit inspections until such time as a Certificate of Occupancy is issued. I voluntarily and without any fear, threats, or promises consent to the inspections referenced above.
>
> (2) I do not consent to have my property inspected by the City of Rochester**
>
> **Please be advised that the City of Rochester may make an application for an administrative inspection warrant, which may cause a delay in processing your application for a Certificate of Occupancy.

ECF No. 46-3 at 1. Wirth checked the second option, indicating that he did not consent to having his property inspected by the City. *Id.*

Section 90-16A(1) ("90-16A(1)") of Defendant City's Municipal Code states the following:

> No person shall permit the occupancy of a one-family rental dwelling, a building containing two or more dwelling units, or a mixed-occupancy building containing one or more dwelling units unless a valid certificate of occupancy is in effect for said building. If such a building is occupied in violation of this section, a ticket may be served on the owner of the building. The violation shall be considered a high-level violation for which the penalties set forth in § 13A-11D(1)(c) of the Municipal Code shall apply.

ECF No. 46-9 at 1.

On March 14, 2016, the City sent a letter to Wirth stating "[w]e have received your Certificate of Occupancy application. An inspection of your property has been scheduled for **March 29, 2016 @ 10 a.m.** If this date/time is inconvenient for you, please call **428-6520** to make other arrangements." ECF No. 46-4. Defendants contend that this letter was "mistakenly sent to the Plaintiff." ECF No. 46 at 3. There is no indication in the record that the parties had any contact between the March 14 letter and the March 29 inspection date.

On March 29, 2016, a City inspector went to the Gregory Street Property to conduct an inspection. He did not encounter Wirth or the Gregory Street Property tenants and did not access the inside of the property. He made the following notes from that visit to the property: "NO SHOW FOR SCHEDULED INSPECTION. EXTERIOR IN GOOD SHAPE . . . NOTES: 1 STORY;FRAME;SHED." ECF No. 46-1 at 3.

On March 30, 2016, the City issued Vagabond a "Notice and Order" for failure to obtain a Certificate of Occupancy under RMC 90-16A(1). ECF No. 47-5 at 1-2. The record indicates that there was some interaction between the parties over the proceeding months, but that the City never

obtained a warrant, and an inspection never took place. *See* ECF No. 47-1 at 1-3. On July 25, 2016, Defendant Daniel Arena, the newly assigned Code Inspector Officer sent Vagabond a warning letter for lack of Certificate of Occupancy. ECF No. 47-12 at 2. On September 28, 2016, the City issued Vagabond a ticket for "[f]ailure to obtain a Certificate of Occupancy for the subject property" under RMC section 90-16A(1). ECF No. 37-1 at 3. The ticket carried a fine of $150.00. *See* ECF No. 47-8 at 1.

A hearing was subsequently held and the City's Municipal Code Violations Bureau found Vagabond not guilty and the adjudicated fine amount was adjusted to $0.00.[1] *Id.* at 47-48. Wirth and Vagabond incurred $2,315 in legal fees defending the City's prosecution. ECF No. 39 at 611. When the City declined to reimburse Wirth for his attorney fees, *see* ECF No. 39 at 611, he brought suit in New York State Supreme Court, Monroe County on behalf of himself and Vagabond to "stop [the City's] unlawful and unconstitutional prosecutions" and recover the attorney fees. *Id.* at 612; ECF No. 37-3 at 9. Defendants then removed the matter to this Court. *See* ECF No. 1.

**DISCUSSION**

Plaintiff's Complaint brings the following causes of action: (1) malicious prosecution and failure to train and supervise, under 42 U.S.C. § 1983; (2) malicious prosecution under New York Law; (3) violations of Plaintiff's rights under the Fourth Amendment of the United States Constitution; (4) violations of Plaintiff's rights under Article I, § 12 of the New York Constitution; (5) violation of Plaintiff's rights under New York Civil Rights Law § 8; (6) violation of Plaintiff's rights under the Eighth and Fourteenth Amendments of the United States Constitution, and New York Constitution Article I, § 5 and New York Civil Rights Law § 11. Plaintiff has withdrawn

[1] Defendants assert that the City Law Department voided the ticket before it was adjudged "not guilty," suggesting that the ultimate adjudication was superfluous. *See* ECF No. 47-13 at 4. Plaintiff disputes this characterization and asserts that the ticket was not disposed of until actually adjudicated at the hearing. *See* ECF No. 48-1 at 4-5.

Counts I and II. *See* ECF No. 48 at 29. Plaintiff seeks summary judgment on Counts III, IV, and VII against the City. Defendants seek summary judgment via cross-motion on all causes of action.

**I. Fourth Amendment (Count III)**

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and further provides that no Warrants shall issue, but upon probable cause." *Mamakos v. Town of Huntington*, No. 16-CV-5775(SJF)(GRB), 2017 WL 2861719, at *8 (E.D.N.Y. July 5, 2017) (alterations, internal quotations, and citation omitted). "[M]unicipal inspections of private homes must comply with the Fourth Amendment." *Weisenberg v. Town Bd. of Shelter Island*, 404 F. Supp. 3d 720, 735 (E.D.N.Y. 2019) (citing *Camara v. Municipal Ct. of the City & Cnty. of San Francisco*, 387 U.S. 523, 534 (1967)). Absent exigent circumstances, consent, or the like, the subject of any administrative search, including a municipal search, "must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker" for such a search to be constitutional. *See Weisenberg*, 404 F. Supp. 3d at 735 (citing *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015)).

In moving for summary judgment, Plaintiff argues that 90-16A(1) of the City's property code is unconstitutional on its face because it fails to provide an opportunity for pre-compliance review and is not limited in time, place and scope. ECF No. 37-3 at 16-22. Plaintiff also raises an as-applied Fourth Amendment challenge. *See* ECF No. 37-3 at 7, 19; ECF No. 48 at 13. Plaintiff's summary judgment briefing also includes a section asserting why they have standing to raise Fourth Amendment claims. ECF No. 37-3 at 28-30. As discussed below, the Court finds that Plaintiff lacks standing to assert his Fourth Amendment claims and that Defendants are entitled to summary judgment as to Count III.

**A. Plaintiff Lacks Article III Standing**

"Article III of the Constitution limits the subject-matter jurisdiction of the federal courts to cases and controversies." *Libertarian Party of Erie Cnty. v. Cuomo*, 300 F. Supp. 3d 424, 432 (W.D.N.Y. 2018). A plaintiff is required to establish standing to meet the case-or-controversy requirement. *Id.* To establish Article III standing, the plaintiff must demonstrate:

> (1) injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.

*Id.* "The plaintiff must establish standing for each claim asserted and for each type of relief sought." *Id.* "To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Liu v. New York City Campaign Fin. Board*, No. 14-cv-1687 (RJS), 2016 WL 5719773, at *4 (S.D.N.Y. Sept. 29, 2016) (citing *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012)). In other words, "a plaintiff cannot rely solely on past injuries," but instead "must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Id.*

"To establish Fourth Amendment standing in the property-inspection context . . . a plaintiff needs to present allegations or evidence that the government has actually conducted a warrantless search of plaintiff's property pursuant to the inspection ordinance or has imminent plans to do so." *Flynn v. City of Lincoln Park*, No. 2:18-cv-12187, 2020 WL 344854, at *7 (E.D. Mich. Jan. 21, 2020) (citing *Vonderhaar v. Vill., of Evendale, Ohio*, 906 F.3d 397, 399 (6th Cir. 2018)). Here, Plaintiff has not suffered an actual Fourth Amendment injury nor does he have a sufficient likelihood of future Fourth Amendment harm.

First, there is no evidence in the record that Defendants actually searched the Gregory Street Property without a warrant or without consent. Unable to rely on an actual search, Plaintiff argues that the Fourth Amendment harm lies in the City's prosecution and the imposition of a penalty upon a landlord who did not consent (and could not consent since the property was tenant-occupied) to a warrantless search under the City's property code. *See* ECF No. 37-3 at 28; ECF No. 48 at 30. Defendants do not dispute that Plaintiff incurred attorney's fees defending a prosecution that should not have occurred in the first place. *See* ECF No. 47-13 at 5, 13.

However, the fact that Plaintiff suffered *some* injury does not mean that he suffered a Fourth Amendment injury. *See Vonderhaar*, 906 F. 3d at 402 ("[T]he landlords seem to think that their alleged Fifth Amendment injury permits them to bring their Fourth Amendment challenge. But crossover standing does not exist. Litigants must possess standing for each individual claim they press."). Indeed, the Sixth Circuit reached the same conclusion on similar facts in *Vonderhaar v. Village of Evendale, Ohio*:

> [Landlord] claims standing on the ground that the Village fined him for failing to file his permit applications on time—retaliation (he says) for publicly advocating against the building code and bringing this lawsuit. True or not, that injury would provide [Landlord] standing only to allege a violation of his free speech or due process rights, not his Fourth Amendment rights.

906 F.3d 397, 402 (6th Cir. 2018). Thus, Plaintiff cannot establish that he has suffered actual Fourth Amendment harm. *See Flynn*, 2020 WL 344854, at *4.[2]

[2] The Court also notes that Plaintiff's reliance on *City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015) to establish a Fourth Amendment violation falls short. As the Sixth Circuit reasoned in *Vonderhaar*, 906 F.3d at 402:

> *City of Los Angeles v. Patel* does not save the claim either. *Patel* invalidated a law that required hotel owners to turn over records to the police without a warrant. 135 S. Ct. at 2448, 2451. But the hotel owners in *Patel* had "been subjected to mandatory record inspections under the ordinance without consent or a warrant." *Id.* at 2448. That by itself distinguishes that case from this one and perhaps explains why *Patel* never addressed Article III standing.

Second, Plaintiff cannot establish a risk of future harm sufficient to confer standing. Plaintiff alleges a desire to purchase rental property in the City of Rochester in the future once the City's ordinance has been declared illegal. ECF No. 39 at 612. In the meantime, and with the ordinance still on the books, Plaintiff has sold the Gregory Street Property "to avoid further prosecutions." *Id.* Despite this testimony, the record shows that any threat of future Fourth Amendment harm is speculative at best.

Plaintiff points out that the "City has issued over 16,000 'notice and orders' citing violations of RMC § 90-16A(1), which the City admits are 'the precursor to a property code ticket in the City of Rochester.'" ECF No. 48 at 23-24. Based on that fact, Plaintiff argues that that these notice and order violations, which are subject to ticketing, "*can serve no other purposes than to pressure property owners into consenting to warrantless inspections*." *Id.* at 24 (emphasis in original). However, the record is bereft of any evidence that a landlord or tenant in the City has ever acquiesced to a warrantless inspection due to a threat of penalty; or that the City has ever conducted an inspection without obtaining a warrant where consent was not given. *See Vonderhaar*, 906 F.3d at 402 (6th Cir. 2018) ("That the building commissioner has conducted numerous inspections of properties likewise does not provide evidence of a risk of future constitutional harm. What matters is whether the commissioner has conducted a warrantless inspection in violation of the Fourth Amendment (he has not) or whether he is likely to do so in the future (he is not).").

Furthermore, the language and provisions of the property code enforcement scheme minimize risk of future Fourth Amendment harm. Section 90-16K of the property code has an express warrant provision: "The Director and Commissioner shall each have the authority to seek inspection warrants, pursuant to Article I, Part B, of the Charter of the City of Rochester, where

the same are constitutionally required, regardless of whether an application for a Certificate of Occupancy has been submitted." ECF No. 47-9 at 5. In turn, the referenced warrant provision provides in a subsection titled "Right of Entry" that "[i]n the performance of official duties, subject to the further requirements established in this part and the obtaining of a warrant when the same is constitutionally required, designated City officers or employees may enter premises to enforce the property codes." ECF No. 47-9 at 10. This language minimizes the risk of a future Fourth Amendment violation because it expressly contemplates that the right of entry will be conducted in a constitutional manner. *See Vondehaar*, 906 F.3d at 401 ("Start with the code. It permits a building commissioner only 'to secure entry' to structure with 'the remedies provided by law.' Because the Fourth Amendment prohibits a warrantless search, it is not a 'remed[y] provided by law.'") (internal citation omitted); *see also Flynn*, 2020 WL 344854, at *5 (comparing language of right to "secure entry" provisions).

It is true that a homeowner may be penalized under 90-16A(1) for not having a Certificate of Occupancy, ECF No. 47-9 at 1, but the City has an uncodified ticketing procedure which does not permit ticketing where consent to inspect has been denied. *See* ECF No. 47-10. Read together, these provisions do not evidence a sufficient likelihood that the City will conduct a warrantless search of a rental property in the future.

Finally, evidence of Defendants' understanding of what its code enforcement scheme permits also minimizes the risk of future harm. The City's Director of Buildings and Zoning gave a sworn statement, stating "[t]he ticket was withdrawn and voided by the City of Rochester Law Department due to the fact that pursuant to internal procedure the ticket should not have issued . . . The ticket was issued by mistake." ECF No. 47-14 at 4. Given the other evidence discussed above, this statement is good evidence that Plaintiff is not at future risk of Fourth Amendment

harm. *See Vonderhaar*, 906 F.3d at 401 (finding no risk of future Fourth Amendment harm where "[t]he commissioner's sworn account bolsters the Village's promise that it has no plans to violate the Fourth Amendment" and "[t]he Village [ ] has no history of prior illegal searches—against [Plaintiff Landlords], or any other property owner.").

Based on this record, the Court finds that Plaintiff has failed to establish the injury necessary to support a Fourth Amendment claim—both facial and as-applied. *See Flynn*, 2020 WL 344854, at *4 (("[B]ecause the plaintiffs' property had not actually been inspected without their consent or warrant, . . .[Landlord Plaintiffs] had [not] suffered any actual injury that could support an as-applied Fourth Amendment challenge. [T]hat same lack of risk of harm—past, present, or future—also bar[red] them from bringing a facial fourth Amendment challenge.") The Court will therefore enter summary judgment in favor of Defendants on Count III as it relates to Plaintiff's facial and as-applied challenges to 90-16A(1) of the City's property code.

**B. Plaintiff Lacks a Reasonable Expectation of Privacy**

To the extent Plaintiff's Complaint is premised on violations of Plaintiff's *individual* Fourth Amendment rights, rather than facial and as-applied challenges to the ordinance itself, such claims fail for a separate and additional reason: Plaintiff lacks the necessary reasonable expectation of privacy in the Gregory Street Property to support claims for such violations.

The Gregory Street Property was occupied by tenants "at all relevant times," ECF No. 39 at 19, and nothing in the record indicates that Plaintiff retained an expectation of privacy in any part of the premises while it was rented. *See Hafez v. City of Schenectady*, No. 1:10-cv-541 (MAD/DRH), 2011 WL 13352120, at *11 (N.D.N.Y. Aug. 30, 2011) ("Finally, to the extent that plaintiff is attempting to assert that the Ordinance violates his Fourth Amendment rights regarding apartments which are occupied, he does not have standing to bring such a challenge."); *Mangino*

*v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 234 (E.D.N.Y. 2010) ("A landlord generally does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant and that is occupied by that tenant." (collecting cases)).

**II. NY Constitution, Article I, § 12 and Civil Rights Law § 8 (Counts IV and V)**

Both parties seek summary judgment on Plaintiff's claims under Article I, § 12 of the New York Constitution and New York Civil Rights Act § 8. Article I, § 12 "provides similar but in some circumstances broader protections than the Fourth Amendment to the United States Constitution." *Davis v. City of New York*, 959 F. Supp. 2d 324, 368 (S.D.N.Y. 2013). "In order to survive summary judgment, plaintiffs must at least show that they have suffered constitutional injuries under Article I section 12 that are not recognized under the Fourth Amendment." *Id.*

Plaintiff's brief provides several examples of scenarios where Article I, § 12 provides greater protections against search and seizure than the Fourth Amendment. *See* ECF No. 37-3 at 22-25. But these examples fail to shed light on what constitutional injuries Plaintiff has suffered under Article I, § 12 that are not protected by the Fourth Amendment.[3] Therefore, Defendants are entitled to summary judgment on Plaintiff's Article I, § 12 claims. *See Davis*, 959 F. Supp. 2d 368.

Furthermore, where no cause of action exists under § 12 of the New York State Constitution, there is no right of action under Civil Rights Law § 8. *See Gustafson v. Vill. of*

[3] Reliance on *Sokolov v. Village of Freeport*, 52 N.Y.2d 341 (1981) falls short. The Court agrees with *Sokolov* that "[a] property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property." 52 N.Y.2d 341, 346. But, as Plaintiff himself states, he had no authority to consent to a search here since tenants occupied the Gregory Street Property at all times. *See* ECF No. 48 at 27-29. Furthermore, a landlord's privacy-related interest in "self-protection," as discussed in *Sokolov*, 52 N.Y.2d at 347, and addressed by Plaintiff, ECF No. 37-3, is a protection provided to an owner when the premises are unoccupied. *See Sokolov*, 52 N.Y.2d at 347 ("[E]ven if the premises were vacant during the inspection, there would nevertheless be a serious intrusion upon the interests of the owner deserving of constitutional protection.")

Defendants admit that Plaintiff should not have been prosecuted. *See* ECF No. 47-12 at 2-3. But the fact that the Plaintiff suffered ills as a result of Defendants' "mistake" does not mean the medicine lies in Article I, § 12 and its protections against unreasonable searches, seizures, and interceptions.

*Fairport*, 106 F. Supp. 3d 340, 351 (W.D.N.Y. 2015) ("It would be inconsistent with the existing case law for this Court to recognize a cause of action under Civil Rights Law § 8 where it is clear that no such cause of action would exist under § 12 of the New York State Constitution."). The Court therefore grants summary judgment in favor of Defendants on Counts IV and V.

**III. Eighth & Fourteenth Amendments, New York Constitution Article I, § 5 and New York Civil Rights Law § 11 (Count VI)**

Plaintiff's Complaint brings causes of action arising under the Eighth Amendment of the United States Constitution, New York Constitution Article I, § 5 and New York Civil Rights Law § 11, all related to the imposition of fines. *See* ECF No. 39 at 29. Plaintiff did not move for summary judgment on these claims in his motion, but Defendants ostensibly did, as their summary judgment motion requests dismissal of all Plaintiff's claims in Defendants' favor and dismissal of Plaintiff's Complaint in its entirety.

However, Defendants mention that they are entitled to summary judgment on these claims without elaboration. The Court need not address this undeveloped argument. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). The Court therefore denies Defendants' motion for summary judgment on Count VI without prejudice.

**IV. Declaratory Judgment (Count VII)**

"[D]eclaratory judgments and injunctions are remedies, not causes of action." *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). Thus, "while styled as [a] separate cause[] of action, . . . [Plaintiffs'] 'claims' for injunctive and declaratory relief are merely the remedies he seeks for the underlying causes of action alleged." *See Craft v. Vill. of Lake George*, 39 F. Supp. 3d 229, n.4 (N.D.N.Y. 2014).

Therefore, summary judgment is entered in favor of Defendants on Count VII because it does not present a cause of action, but declaratory relief remains viable to the extent any claims survive.

**CONCLUSION**

For the foregoing reasons, Plaintiff's partial motion for summary judgment, ECF No. 37, is DENIED. Defendants' motion for summary judgment, ECF No. 47, is GRANTED IN PART. Defendants are granted summary judgment on Count III (Fourth Amendment Violations), Count IV (New York State Constitution, Article I, § 12 Violations), Count V (New York Civil Rights Law § 8 Violations), and Count VII (Declaratory Judgment). Counts I and II are DISMISSED as withdrawn by Plaintiff.

Plaintiff is directed to submit supplemental memoranda to this Court by October 30, 2020, explaining (1) whether he will maintain his Count VI claims in light of the disposition of his other causes of action; and (2) his theory with respect to those claims moving forward.

IT IS SO ORDERED.

Dated: September 30, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court